IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK MANSOUR, | ) | CASE NO. 1:08 CV 755 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION AND** |
| SECURITY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Mark Mansour, for disability insurance benefits and supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Mansour had severe impairments consisting of chronic multiple joint pain and inflammation secondary to either fibromyalgia or to rheumatoid arthritis, major depression, history of polysubstance abuse, non-insulin dependent diabetes mellitus, hepatitis C, obesity, status post lower back and neck surgery for degenerative disk disease, and hypertension.[1] The ALJ made the following finding regarding Mansour's residual functional capacity:

---

[1] Transcript ("Tr.") at 30.

> The claimant retains the residual functional capacity to perform light work activities.  He is able to lift and or carry ten pounds frequently and twenty pounds occasionally.  He exhibits no other exertional limitations. Nonexertionally he is limited to simple repetitive tasks without substance abuse.  With substance abuse the claimant is unable to perform even simple repetitive tasks in the competitive workplace on a regular and continuing basis (20 CFR §§ 404.1545 and 416.945).[2]

The ALJ determined that the above-quoted residual functional capacity precluded Mansour from performing his past relevant work.[3]

Based on a hypothetical question posed to the vocational expert at the hearing incorporating the above-quoted residual functional capacity, the ALJ decided that a significant number of jobs existed locally and nationally that Mansour could perform.[4]  He, therefore, found Mansour not under a disability.[5]

Mansour asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Mansour presents three issues for judicial review:

- Does substantial evidence support the ALJ's assessment of Mansour's psychiatric impairments and the residual functional capacity finding?

- Did the ALJ properly evaluate Mansour's physical impairments for purposes of the physical limitations incorporated into the residual functional capacity finding?

---

[2] *Id.*

[3] *Id.* at 31.

[4] *Id.*

[5] *Id.*

• Does material, new evidence warrant a remand?

I conclude that substantial evidence supports the ALJ's residual functional capacity finding, both with respect to mental and physical limitations. I also conclude that the evidence submitted subsequent to the hearing before the ALJ, although new, was not material to the applications under review. The Commissioner's decision to deny disability insurance benefits and supplemental security income, therefore, must be affirmed, and the motion to remand must be denied.

## Analysis

### 1.    Standard of review

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[6]

---

[6] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

-3-

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[7]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[8]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.     Mansour's mental residual functional capacity**

The first issue for review centers on the ALJ's decision to give the opinion of the medical expert weight over that of the treating psychiatrist and consulting psychologist in determining Mansour's mental residual functional capacity.

The controlling law regarding weight and articulation of the opinions of medical sources has been recently well summarized by the Sixth Circuit in *Blakley v. Commissioner of Social Security*.[9]  I incorporate the *Blakley* discussion of the treating physician rule and the "reason-giving requirement" by reference.  In brief summary, the ALJ must give a qualifying treating source opinion controlling weight unless the ALJ gives good reasons on the record for declining to accord such weight.

_____

[7] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[8] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[9] *Blakley v. Comm'r of Soc. Sec.*, — F.3d —, 2009 WL 3029653, at **6-7 (6th Cir. Sept. 24, 2009).  *See also*, *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 729-31 (N.D. Ohio 2005).

Donald Leventhal, Ph.D., did a psychological evaluation of Mansour on February 10, 2003.[10]  He diagnosed Mansour as having alcohol dependence in early remission and major depressive disorder, recurrent, moderate.[11]  He assigned Mansour a GAF of 35 and opined that Mansour had significant limitations related to his depression and alcohol dependence:

- • impaired in his relationship to others, including fellow workers and supervisors;

- • able to maintain attention to perform simple repetitive tasks for short periods of time;

- • unable to maintain attention to perform simple repetitive tasks over the extended period of time of a workday; and

- • unable to withstand the stress and pressures associated to day-to-day work activity.[12]

Shortly following Dr. Leventhal's evaluation, Katherine Flynn, Psy.D., a state agency reviewing psychologist, did a mental residual functional capacity assessment of Mansour. She rated him moderately limited in ability to maintain attention and concentration for extended periods and in the ability to perform activities within his schedule.[13]  She also found moderate limitations in the ability to complete a normal workday, the ability to interact appropriately with the general public, and the ability to accept instructions and respond

------

[10] Tr. at 678-83.

[11] *Id.* at 683.

[12] *Id.*

[13] *Id.* at 684.

appropriately to criticism from supervisors.[14]  She concluded that Mansour exhibited no

substantial loss of ability to meet the mental demands of routine, low-stress activities.[15]

Gregory Boehm, M.D., Mansour's treating psychiatrist, did an assessment on June 1,

2004.[16] He rated Mansour poor in almost every category with respect to making occupational

adjustments, intellectual functioning, and making personal and social adjustments.[17]  He

concluded "[d]ue to ... bipolar illness, clinical dependency and panic disorder, Mark Mansour

cannot function in a work setting."[18]

Finally, the ALJ had a medical expert testify at the hearing, Sydney Bolter, M.D., a

psychiatrist.[19]  Dr. Bolter testified that, without substance abuse, Mansour's mental

impairments imposed only mild limitations on daily living activities, mild to moderate

limitations on social functioning, and mild limitations on the capacity to maintain

concentration, persistence, and pace for simple repetitive tasks.[20] Dr. Bolter attributed the

various limitations imposed by Dr. Leventhal and Dr. Boehm to the effects of substance

---

[14] *Id.* at 685.

[15] *Id.* at 686.

[16] *Id.* at 1168-69.

[17] *Id.*

[18] *Id.* at 1168.

[19] *Id.* at 2181-86.

[20] *Id.* at 2181-82.

abuse.[21]  During the course of Dr. Bolter's testimony, Mansour confirmed that he had been

clean and free of substance abuse since September of 2003.[22]

Properly recognizing that Mansour's limitations must be viewed both with and

without substance abuse, the ALJ concluded that, with substance abuse, Mansour would be

disabled but without substance abuse he could perform a significant number of jobs that

existed locally and nationally.[23]  In doing so, he gave a detailed articulation with respect to

the opinions of the various psychological medical sources and explained why he was relying

on the opinion of Dr. Bolter rather than on the opinions of Drs. Leventhal or Boehm.

> Dr. Bolter opined, and I concur, that, without substance abuse, the claimant
> exhibits mild restrictions of daily living; mild to moderate difficulties
> maintaining social functioning; mild difficulties maintaining concentration,
> persistence, or pace with regard to simple repetitive tasks; and moderate
> difficulties maintaining concentration, persistence, or pace with regard to more
> detailed or complex tasks.  There are no episodes of decompensation without
> substance abuse.  Dr. Bolter also opined that the record does not support the
> opinion of Dr. Leventhal that the claimant could not maintain even simple
> repetitive tasks due to depression.  Dr. Bolter opined that the claimant's history
> of psychiatric decompensation was secondary to substance abuse, and agreed
> with the claimant that his depression has improved.  With substance abuse I
> find that the claimant exhibits more than moderate restrictions of activities of
> daily living, more than moderate difficulties maintaining social functioning,
> concentration, persistence, or pace, and one or two episodes of
> decompensation.  In fact, with substance abuse the claimant is unable to
> perform even simple repetitive tasks in the competitive workplace on a regular
> and continuing basis.[24]

---

[21] *Id.* at 2183-86.

[22] *Id.* at 2185.

[23] *Id.* at 31.

[24] ECF # 11 at 20.

***

As noted by Dr. Bolter, psychologist Donald Leventhal, Ph.D., evaluated the claimant on February 10, 2003.  Dr. Leventhal concluded that the claimant exhibited recurrent moderate major depression and alcohol dependence in early remission.  Dr. Leventhal opined that the claimant's global functioning was significantly impaired to a degree greater than that found by Bolter.  I agree with Dr. Bolter that the opinion of Dr. Leventhal is not supported by ongoing symptoms or clinical abnormalities of record for any continuous period of not less twelve months, in the absence of substance abuse.  Indeed, Dr. Leventhal's evaluation took place within three months of the claimant's discharge from the Cleveland Clinic, and findings similar to those reported by Dr. Leventhal are not evidenced in the remaining voluminous medical notes of record.  Indeed, even while at the Cleveland Clinic the claimant's mental status examinations were not consistent with the inability to perform simple repetitive tasks, in contrast with Dr. Leventhal's conclusion that the claimant could only perform simple repetitive tasks for short periods of time.  Further, Dr. Leventhal did not report a comprehensive mental status examination showing concomitant abnormalities, and appeared to base his conclusions upon the claimant's self report of his history.  In that regard, the remaining evidence of record indicates that the claimant reported a history of only low grade depression aside from his polysubstance abuse, that depression not interfering with his capacity for sustained full time employment.  Indeed, Dr. Leventhal admitted that his opinion related to the "current" state of the claimant's mental health, and Dr. Leventhal was apparently unaware that the claimant himself admitted to ongoing polysubstance abuse through early 2004.  Moreover, Dr. Leventhal stated that the claimant exhibited only a slight impairment of cognitive functioning, was alert and oriented, did not exhibit a significant memory impairment, and exhibited no impairment of concentration.  Dr. Leventhal's opinions appear to be based upon the claimant's report of symptoms of depression, which the claimant admitted at hearing have improved with medication changes.  Considered as a whole the evidence of record does not reflect ongoing symptoms or mental status abnormalities consistent with the opinion of Dr. Leventhal, with regard to any continuous period of not less twelve months, absent the effects of polysubstance abuse.  I therefore give the opinion of Dr. Leventhal little weight (Exhibit B11F).

-8-

In fact, the state agency medical expert (SSR96-6p) program psychologist concluded that the claimant is able to perform simple repetitive tasks, in the absence of substance abuse, consistent with opinion of Dr. Bolter (Exhibits B12F, B13F).[25]

***

I therefore cannot credit the opinion of Dr. Boehm, dated June 1, 2004, that the claimant was virtually incapacitated on a psychiatric basis from performing activities in the workplace.  Although Dr. Boehm identified polysubstance abuse as one of the reasons why the claimant was unable to work, that condition was in remission at the time, and Dr. Boehm's opinion was excessive in scope, given the claimant's benign clinical presentation.  Moreover, as noted by Dr. Bolter, Dr. Boehm appears to have been acting an advocate for the claimant; in February 2004 Dr. Boehm had opined that the claimant's medical conditions required that the claimant be allowed the use of a swimming pool and steamroom at the local YMCA.  Regardless, the evidence of record does not reflect sustained mental status abnormalities consistent with the degree of limitation opined by Dr. Boehm.  Nor does Dr. Boehm set forth an opinion with regard to any continuous period of not less twelve months in the absence of substance abuse.  I therefore accord little weight to the opinion of Dr. Boehm.  Indeed, Dr. Boehm diagnosed impairments that appear nowhere else in the record, and which are not even alleged by the claimant, including bipolar illness and panic disorder.  Dr. Boehm's opinions are thus internally inconsistent, with contrasting diagnoses.  Dr. Boehm's opinions are conclusory and excessive, neither supported by his own treating records nor by the record considered in its entirety.  In fact, the claimant himself does not allege that he is as impaired as opined by Dr. Boehm (Exhibit B20F).[26]

The portions of the ALJ's decision quoted above represent the best articulation with respect to medical sources than I have seen in any ALJ decision and more than satisfy the treating physician rule and the reason-giving requirement discussed in the *Blakley* opinion.[27]

---

[25] *Id.* at 23-24.

[26] *Id.* at 26.

[27] *Blakley*, 2009 WL 3029653, at **6-7.

Counsel for Mansour makes a reasonable argument that Mansour was permanently damaged by his substance abuse and that his limitations with and without substance abuse should be adjudged identical.  Nevertheless, Dr. Bolter's opinion and the ALJ's articulation with respect thereto, in light of the other medical source opinions in the administrative record, constitute relevant evidence that a reasonable mind might accept to support the ALJ's conclusion.[28]  Accordingly, the ALJ's residual functional capacity finding as to mental limitations falls within the zone of choice "within which the decision makers [the ALJ and the Commissioner] can go either way, without interference by the courts."[29]

### 3.    Mansour's physical residual functional capacity

The ALJ found that Mansour had the capacity to perform light work activities with the ability to lift or carry 10 pounds frequently and 20 pounds occasionally and with no other exertional limitations.[30]   In reaching this finding, he relied upon the opinion of Frank Cox, M.D., the medical expert who testified at the hearing[31] and the assessment of the state agency reviewing physician.[32] These are the only medical source residual functional capacity evaluations in the administrative record. [33]

---

[28] *Id.*, at 6.

[29] *Id.*, quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

[30] Tr. at 30.

[31] *Id.* at 29.

[32] *Id.*

[33] ECF # 26, Transcript of the Oral Argument of April 8, 2009 ("04/08/09 Tr.") at 5.

Dr. Cox opined that Mansour had the capacity for light work, lifting 10 pounds occasionally and 20 pounds maximum, with no limitations on sitting or standing.[34]  The state agency reviewing physicians imposed the same limitations.[35]

Mansour takes issue with Dr. Cox's opinion, especially with respect to arthritis, because he testified at one point that he saw no evidence of joint inflammation.[36]  Later in his testimony he did acknowledge some evidence of swelling in the joints and arthritis[37] but he noted that this did not seem to be a concern of physicians in the last few years.[38]

From a review of Mansour's arguments regarding the medical evidence after his onset date of June 30, 2002, it appears that the evidence commences with treatment on September 22, 2002, and concludes with some treatment on September 18, 2003.[39]  The physicians who treated Mansour for these joint problems during this time period, David Mandel, M.D. and Robert McNutt, M.D., did not impose any limitations or offer residual functional capacity evaluations.

---

[34] Tr. at 2189.

[35] *Id.* at 704-10.

[36] *Id.* at 2190.

[37] *Id.* at 2192-93.

[38] *Id.* at 2193.

[39] ECF # 20 at 25-26.

The briefs of the parties competently set out the evidence regarding joint problems, which goes both ways.[40]  I conclude that a reasonable mind might accept the evidence regarding joint problems as adequate to support the ALJ's residual functional capacity finding even though substantial evidence may also exist supporting the opposite conclusion.[41]

**4.    Request for remand**

Mansour requests remand of this case under sentence six of 42 U.S.C. § 405(g) for the ALJ to consider new evidence consisting of medical records of treatment after the ALJ's decision on January 25, 2006.  Such new evidence may be considered only to determine whether it merits a remand.[42]  "Sentence six" of 42 U.S.C. § 405(g) permits a reviewing court to remand, without ruling on the merits, if new and material evidence is submitted, and the claimant shows good cause for failing to introduce this evidence during the prior proceedings.[43]

Additional evidence is considered "new" if that evidence was "not in existence or available to the claimant at the time of the administrative proceeding."[44]  To meet the "good cause" requirement, a claimant must give a valid reason for failing to obtain the evidence

---

[40] *Id.* at 25-26 (Mansour's brief) and ECF # 23 at 16-18 (the Commissioner's brief).

[41] *Blakley*, 2009 WL 3029653, at *6.

[42] *See*, *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

[43] 42 U.S.C. § 405(g) (sentence six); *see also Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

[44] *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).

prior to the ALJ's decision.[45]  "Materiality" is defined as a reasonable probability that the ALJ would have rendered a different decision if the evidence had been available for consideration.[46]  The claimant bears the burden of showing that a sentence six remand is proper.[47]  All three criteria must be met in order to satisfy a sentence six remand.[48]

Counsel conceded at the oral argument that the only criteria at issue in this case is materiality.[49]

To satisfy his burden of proof regarding materiality, Mansour must demonstrate that there was a "reasonable probability" that the ALJ would have reached a contrary disposition had he considered the new evidence.[50]  Evidence of an aggravation or deterioration of an impairment is not material if the evidence in the record at the time of the ALJ's decision justifies a finding of no disability.[51]  If an impairment degenerated to the extent that it results in disabling limitations, then the appropriate remedy is to initiate a new remedy for benefits as of the date that the aggravation caused the impairment to become disabling.[52]

---

[45] *Cline*, 96 F.3d at 149.

[46] *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990).

[47] *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 553-54 (6th Cir. 1984).

[48] 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

[49] ECF # 26, 04/08/09 Tr. at 7.

[50] *Sizemore*, 865 F.2d at 711.

[51] *Id.* at 712.

[52] *Id.*

Based upon my review of the new evidence, I conclude that Mansour has failed to sustain his burden that such evidence should relate back to evidence that his impairments were disabling as of the date of the ALJ's opinion.  All the new evidence submitted can fairly be construed as evidence of aggravation of impairments not disabling as of the time of the ALJ's decision.

### Conclusion

Substantial evidence supports the finding of the Commissioner that Mansour had no disability.  Accordingly, the decision of the Commissioner denying Mansour disability insurance benefits and supplemental security income is affirmed.  Further, Mansour's motion for a remand under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence is hereby denied.

IT IS SO ORDERED.

Dated:   September 30, 2009                          s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge